IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CINDY G. McDONOUGH,<br>individually and on behalf of all others<br>similarly situated,<br>          Plaintiff<br><br>v.<br><br>RISK MANAGEMENT ALTERNATIVES, INC.,<br>          Defendant | ) ) ) ) ) ) ) ) ) ) <br><br>No. 03-12512 EFH |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION**

The Plaintiff, Cindy G. McDonough, has requested that this Court enter an order determining that this action may proceed as a class action. Plaintiff seeks to certify a class pursuant to Fed. R. Civ. P. 23(b)(2) with respect to Count II and Count III (misnumbered in Plaintiff's Complaint as Count IV) of Plaintiff's Complaint. Counts II and III are brought under the Massachusetts Consumer Protection Act, M.G.L. ch. 93A, which provides for injunctive and other equitable relief for its violation. Plaintiff seeks to enjoin Defendant from continuing to engage in the conduct alleged and such additional equitable relief as may be appropriate. This memorandum is submitted in support of that motion.

**I.   Nature of the Case**

Defendant Risk Management Alternatives, Inc. (hereafter "RMA") is a collection agency, that regularly engages in the collection of consumer debts in Massachusetts through the use of, *inter alia*, telephone calls, letters, and solicitations for telephone authorization from consumers for RMA to draw a check on their checking accounts ("checks by phone") for payment of debts RMA is collecting. Information published by and about RMA indicates that it is the fourth

largest accounts receivable management company[1] with revenues in 2000 of "about $277 million and 28 operating branches located in the United States, England and India,[2] at least 24 of which are located in the United States.[3] RMA states in an advertisement on Monster.com, a job search web site, that it is an "innovator in using cutting edge technology." [4]

Payment through checks by phone involves using paper checks drawn on consumers' accounts with a purported "authorized signature" signed by a representative of either RMA or the underlying creditor "for" the consumers. These paper checks bear check numbers designated by the consumer and should bear the date the consumer authorizes as the date of the check. These transactions are governed by Article 3 of the Uniform Commercial Code, M.G.L. ch. 106, and are **not** electronic funds transfers governed by Federal Reserve Board Regulation E, 12 C.F.R. Part 205.

As a high volume collection agency, RMA uses computer technology and has standard operating policies and procedures that are applied to all of its collection activities.[5] RMA's "cutting edge technology" includes the use of telephone call centers and the collection of consumer debts using checks by phone. This type of payment arrangement eliminates for RMA the chance that a consumer who promises to send a payment will later fail to do so, and thus, increases the chances that RMA or the creditor for whom it is collecting will receive the payment. Such payment arrangements are a common tool used by RMA's collectors.

---

[1]   GTCR website at http://www.gtcr.com/ip/companies/riskmanagementaltern.html.

[2]   RMA website at http://www.rmainc.net/about/companyhistory.asp.

[3]   RMA website at http://www.rmainc.net/about/locations.asp.

[4]   http://company.monster.com/riskma/

[5]   *See* n. 4.

In its collection practices, RMA engages in standard conduct, which occurred in the Plaintiff's case and which violates the FDCPA and Massachusetts debt collection laws and, thereby, violates M.G.L. ch. 93A § 2. RMA's collectors:

1. Threaten to take action, including legal action, that RMA does not intend to take;

2. Threaten to take action, including legal action, that RMA does not intend to take so that consumers will be willing to authorize RMA to use checks by phone drawn on their checking accounts;

3. Request and accept postdated checks by phone;

4. Cause postdated checks by phone to be deposited and/or negotiated prior to the date for which the checks were actually authorized;

5. Request and accept postdated checks by phone without notifying consumers of RMA's intent to deposit and/or negotiate such checks prior to the date for which the check was actually authorized;

6. Cause checks by phone to be deposited and/or negotiated that were not in fact authorized or after the consumers' authorizations have been withdrawn; and

7. Cause the same checks by phone to be deposited and/or negotiated more than once.

Defendant RMA is required to comply with the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA); the Massachusetts debt collection laws, M.G.L. ch. 93 § 24, *et seq.*, the Massachusetts Attorney General's and Banking Commissioner's Regulations promulgated thereunder, 940 CMR § 7.00 and 209 C.M.R. 18.00; and the Massachusetts Consumer Protection Act, M.G.L. ch. 93A and the Attorney General's General Regulations promulgated thereunder, 940 C.M.R. 3.00, all of which prohibit debt collectors from engaging in

3

abusive, deceptive, unconscionable and unfair practices. 940 CMR 3.16(4) makes violation of the FDCPA and other federal consumer protection statutes a *per se* violation of M.G.L. ch. 93A. *Martin v. Sands*, 62 F. Supp. 2d 196, 201. RMA's above-described practices violate the FDCPA and Massachusetts debt collection laws and regulations, thus violating M.G.L. ch. 93A. M.G.L. ch. 93A § 9(1) provides that any person who has been injured by conduct violating the act may bring an action for damages and "such equitable relief, including an injunction, as the court deems to be necessary and proper." Plaintiff brings her claims under M.G.L. ch. 93A for damages individually, on behalf of herself only, and for injunctive relief on behalf of herself and the class she seeks to represent. The class is defined as: All consumers residing in the Commonwealth of Massachusetts who, commencing four years before the date of filing of the Complaint in this action, have been or will be the objects of Defendant's unlawful debt collection efforts, as alleged in the Complaint and specified *supra*.

## II.     Standard for Class Certification

"[T]he district court has wide discretion in determining whether or not to certify a class under Rule 23." *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980). "Rule 23 must be liberally interpreted" and read to "favor maintenance of class actions." *King v. Kansas City Southern Industries*, 519 F.2d 20, 25-26 (7th Cir. 1975). The Court should resolve any doubt regarding the propriety of certification "in favor of allowing the class action," so that it will remain an effective vehicle for deterring corporate wrongdoing. *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968); 394 U.S. 928 (1969).

In order to maintain a class action, Plaintiff must demonstrate that she and the class she wishes to represent, meet all four requirements of Fed. R. Civ. P. 23(a) and fit into one of the categories enumerated in Fed. R. Civ. P. 23(b). *Mack v. Suffolk County*, 191 F.R.D. 16, 19 (D.

Mass. 2000). To meet the threshold requirements of Fed. R. Civ. P. 23(a), Plaintiff must establish that the proposed class has the following qualities:

> (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and, (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Although Plaintiff bears the initial burden of advancing reasons why a putative class action meets the requirements of Rule 23, that burden is not a heavy one. *See Piel v. National Semiconductor Corp.*, 86 F.R.D. 357, 368 (E.D. Pa. 1980). *See also Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir. 1982). Once a plaintiff has demonstrated a preliminary legal showing that the requirements of Rule 23 have been met, the burden of proof is upon the defendant to demonstrate otherwise. 2 H. Newberg, *Newberg on Class Actions* (3d Ed. 1992) ("Newberg") § 7.22 at 7-74 to 7-75. Provided that a plaintiff's contentions regarding the class issues are based upon a reasonable foundation, the Court should not deny certification because of a defendant's challenge. *See Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417 (D.N.M. 1988); *In re Industrial Gas Antitrust Litig.*, 100 F.R.D. 280 (N.D. Ill. 1983); *Kuck v. Berkey Photo, Inc.*, 81 F.R.D. 736 (S.D.N.Y. 1979).

The Supreme Court has noted that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). The Supreme Court has also recognized that the class action procedure is necessary for private rights of action to be initiated. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, *reh'g. denied*, 446 U.S. 947 (1980). As stated in Roper, class actions serve an important function in our system of civil justice

5

because they permit plaintiffs to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." Id. at 338.

> Class actions are essential to enforce laws protecting consumers. As one court has stated:
>
>> In a large and impersonal society, class actions are often the last barricade of consumer protection .... To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer. 574 N.E.2d at 764, 766.

*Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 574 N.E.2d 760 (1st Dist. 1991).

Another court expressed a similar assessment of the value of class action lawsuits:

> [I]f class actions can be said to have a main point, it is to allow the aggregation of many small claims that would otherwise not be worth bringing, and thus to help deter lawless defendants from committing piecemeal highway robbery, a nickel here and a nickel there, that adds up to real money, but which would not be worth the while of an individual plaintiff to sue on.

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC.*, 198 F.R.D. 503, 506 (N.D. Ill. 2001).

### III. The Proposed Class Meets the Requirements for Certification

#### A.     *Rule 23(a)(1) -- Numerosity*

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "When the class is large, numbers alone are dispositive . . . ." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986). Where the class numbers at least 40, joinder is generally considered impracticable. *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Cypress v. Newport News General &*

6

*Nonsectarian Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Riordan v. Smith Barney, supra*, 113 F.R.D. 60 (N.D. Ill.. 1986) (10-29 sufficient); *Sala v. National R. Pass. Corp.*, 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient). It is not necessary that the precise number of class members be known: "A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Lit.*, 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986).

The Court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "The court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential to most cases in order to reach a class determination. . . . Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1995), §7.22.

In the present case, it is reasonable to infer that the numerosity requirement is satisfied because RMA uses standard operating policies and procedures that are applied to all of its collection activities. *Westcott v. Califano*, 460 F. Supp. 737, 744 (D. Mass. 1978) (in action challenging certain welfare policies, existence of policies and 148 families who were denied benefits to which policies applied sufficient to show numerosity, even though it was impossible to identify which of 148 families were denied benefits because of policies complained of). Plaintiff will propound discovery to determine the number of class members.

**B.     *Rule 23(a)(2) – Commonality***

Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law *or* fact. The questions of law in this litigation are absolutely identical among the class members. "Because

7

the class need share only a single legal or factual issue at this stage of the analysis, the commonality prerequisite ordinarily is easily satisfied." *Mulligan v. Choice Mortgage Corp. USA*, 1998 WL 544431, 1998 U.S. Dist. LEXIS 13248 * 7 (D. N. H. Aug. 11, 1998). "The Rule also requires that there be common questions of law or fact, but it does not require that all issues of law or fact involved in the dispute be common. [citations omitted] Varying fact patterns may underlie individual claims as long as a common pattern of unlawful conduct by the defendant is directed at class members." *Curtis v. Commissioner, Maine Dept. Hum. Srvcs.*, 159 F.R.D. 339, 341 (D. Maine 1994) Complete identity of facts is not required, because "to require complete identity would unduly confine class actions to the narrowest circumstances." *United States v. Rhode Island Dept. of Employment Sec.*, 619 F. Supp. 509, 513 (D.R.I. 1985). *See also Guckenberger v. Boston University*, 957 F. Supp. 306, 325 (D. Mass. 1997); *Wilcox v. Petit*, 117 F.R.D. 314, 316 (D. Maine 1987). Furthermore, an assessment of whether class members share common questions of law or fact does not require an assessment of defendant's liability for Plaintiff's claims. *Lamphere v. Brown University*, 553 F.2d 714, 719, n.11 (1st Cir. 1977).

In the present case, common questions of law and fact clearly predominate over individual concerns. The principal questions presented are:

1.   Whether RMA threatens to take action, including legal action, that RMA does not intend to take;

2.   Whether RMA threatens to take action, including legal action, that RMA does not intend to take so that consumers will authorize RMA to use checks by phone;

3.   Whether RMA requests and accepts postdated checks by phone;

4.   Whether RMA deposits and/or negotiates postdated checks by phone prior to the date for which the check was actually authorized;

5. Whether RMA requests and accepts postdated checks by phone without notifying consumers of RMA's intent to deposit and/or negotiate such checks prior to the date for which the check was actually authorized;

6. Whether RMA deposits and/or negotiates checks by phone that were not in fact authorized or after the consumers' authorizations have been withdrawn;

7. Whether RMA deposits and/or negotiates the same checks by phone more than once; and

8. Whether the above-described conduct of RMA is otherwise unfair, deceptive or unreasonable.

The commonality element is met here because RMA treated the Plaintiff and the class members in exactly the same way. By definition (the definition of the class), each class member has been or will be the object of the same unlawful debt collection efforts by RMA as Plaintiff. In this way, RMA treated class members identically. Under these circumstances, the commonality element is met. *See, e.g., Kaminiski v. Shawmut Credit Union*, 416 F. Supp. 1119, 1122-23 (D. Mass. 1976) (each consumer class member borrower treated in identical manner by bank).

Rule 23(a)(2) does not require that every single question of law or fact raised in the litigation be common. The commonality requirement is a low hurdle. The only individual issue in this case might be the identification of the consumers who were the objects of RMA's unlawful debt collection efforts, however such determinations need not be made for the prospective injunctive relief Plaintiff is seeking. Even so, those consumers from whom RMA has collected payments through its unlawful conduct can be easily ascertained from RMA's files. Questions readily answerable from defendant's files do not present an obstacle to class

9

certification. *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 671 n. 2 (N.D. Ill. 1989) (common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank"). Moreover, since Plaintiff seeks only equitable relief on behalf of the class, and not actual damages, there are no individual issues with regard to damages. Because Plaintiff shares common questions with the proposed class, the commonality prerequisite is satisfied.

### C.   *Rule 23(a)(3) – Typicality*

Fed. R. Civ. P. 23(a)(3) requires that the claims of the named plaintiff be typical of the claims of the class. For virtually the identical reasons discussed in the preceding section, this element is also met.

"The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs." *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988). "The named plaintiff's claims are typical of the class when the plaintiff's injuries arise from the same event, practice or course of conduct of the defendant as do the injuries which form the basis of the class claim." *Adair v. Sorenson*, 134 F. R. D. 13, 17 (D. Mass. 1991) "The claims of a class representative are 'typical' when the representative's injuries arise from the same course of conduct as do the injuries that form the basis of the class claims." *Fraser v. Major League Soccer, L.L.C.*, 180 F. R. D. 178, 181 (D. Mass. 1998). To be typical within the meaning of the rule simply requires that the claims of the named plaintiff arise from the same type of conduct which give rise to the class members' claims. *Burstein v. Applied Extrusion Technologies, Inc.*, 153 F.R.D. 488, 491 (D. Mass. 1994); *Adair*, 134 F.R.D. at 17 (D. Mass. 1991). *See also Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 22 (D. Mass. 1991).

certification. *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 671 n. 2 (N.D. Ill. 1989) (common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank"). Moreover, since Plaintiff seeks only equitable relief on behalf of the class, and not actual damages, there are no individual issues with regard to damages. Because Plaintiff shares common questions with the proposed class, the commonality prerequisite is satisfied.

### C.   *Rule 23(a)(3) – Typicality*

Fed. R. Civ. P. 23(a)(3) requires that the claims of the named plaintiff be typical of the claims of the class. For virtually the identical reasons discussed in the preceding section, this element is also met.

"The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs." *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988). "The named plaintiff's claims are typical of the class when the plaintiff's injuries arise from the same event, practice or course of conduct of the defendant as do the injuries which form the basis of the class claim." *Adair v. Sorenson*, 134 F. R. D. 13, 17 (D. Mass. 1991) "The claims of a class representative are 'typical' when the representative's injuries arise from the same course of conduct as do the injuries that form the basis of the class claims." *Fraser v. Major League Soccer, L.L.C.*, 180 F. R. D. 178, 181 (D. Mass. 1998). To be typical within the meaning of the rule simply requires that the claims of the named plaintiff arise from the same type of conduct which give rise to the class members' claims. *Burstein v. Applied Extrusion Technologies, Inc.*, 153 F.R.D. 488, 491 (D. Mass. 1994); *Adair*, 134 F.R.D. at 17 (D. Mass. 1991). *See also Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 22 (D. Mass. 1991).

In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been or will be the object of RMA's unlawful debt collection attempts. All class members' claims arise from the same practices of defendant which give rise to the named plaintiff's claim. Thus, by litigating her own claims, Plaintiff is presenting and "will necessarily present the claims of the absent plaintiffs." "Where plaintiff. . .points to specific and identified documents which are alleged to contain interrelated and cumulative misrepresentations, class certification is proper." *Kirby v. Cullinet Software*, 116 F.R.D. 303, 312 (D. Mass. 1987) Here, Plaintiff has pointed to specific standard conduct in which RMA engages in the collection of consumer debts.

The class members were all injured in the same way by RMA's conduct. Here, the plaintiff named as representative asserts the identical claims as are applicable to all class members, arising out of the same, patterned course of conduct. Plaintiff seeks for herself the same request for relief as she does for the class. For the reasons stated, Plaintiff has satisfied the typicality prerequisite necessary for class certification.

### D.   *Rule 23(a)(4) – Adequacy of Representation*

The Federal Rules of Civil Procedure also require that the named plaintiff(s) provide fair and adequate protection for the interests of the class. This element is generally characterized as an inquiry into whether the named plaintiff, together with her chosen attorneys, will act diligently on behalf of the class. *Amchem*, 117 S. Ct. at 2251, & n.20; *Berland v. Mack*, 48 F.R.D. 121, 127 (S.D.N.Y. 1969). Plaintiff need only demonstrate that her interests will not conflict with those of class members and that her counsel is qualified, experienced and able to vigorously conduct the proposed litigation. *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

"The 'two basic guidelines for meeting the adequacy of representation standard of Rule 23(a)(4) are: (1) the absence of potential conflict between the named plaintiff and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation.'" *Adair*, 134 F. R. D. at 18 (D. Mass. 1991) (citing *Andrews v. Bechtel Power Corp.*). *Accord Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975); *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982).

The First Circuit follows this standard: "[Fed. R. Civ. P. 23(a)] requires that plaintiff demonstrate that her interests will not conflict with those of class members and that her counsel is qualified, experienced and able to vigorously conduct the proposed litigation. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)." *Mack v. Suffolk County*, 191 F.R.D. 16, 23; 2000 U.S. Dist. LEXIS 4007, *23 (D. Mass. Feb. 16, 2000) (named plaintiff adequate where "claims do not conflict with those of the proposed class members but rather state common injuries and legal theories").

Thus, the first relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class. As to the named plaintiff, the courts usually look simply to whether the representative's interests are in any way antagonistic to or in conflict with those of the class members. *Amchem*, 117 S. Ct. at 2251. *Fowler v. Birmingham New Company*, 608 F.2d 1055, 1058 (5th Cir. 1979). Such conflict must involve the subject matter of the suit and may not be minor or collateral. *Berman v. Narragansett Racing Association, Inc.*, 414 F.2d 311, 317 (1st Cir. 1969), cert. denied 369 U.S. 1037; *Vernon J. Rockler and Co. v. Graphic Enterprises, Inc., supra.*, 52 F.R.D. 335, 342 (D. Minn. 1971); *Blackie v. Barrack*, 524 F.2d 891, 908-910 (9th Cir. 1975). Furthermore, such

conflict must be real and not speculative. *Robertson v. NBA*, 389 F. Supp. 867, 899 (S.D.N.Y. 1975).

Here, Plaintiff and the class members seek to enjoin RMA's unlawful standard practices. Given the identity of claims between Plaintiff and the class members, there is no potential for conflicting interests in this action. A successful outcome for Plaintiff will in no way detract from a successful outcome for the class. Simply put, there is no antagonism between the interests of the named plaintiff and those of the class.

The Plaintiff has also satisfied the second requirement of Rule 23(a)(4). Plaintiff has retained counsel experienced in handling class action lawsuits, and understands her obligations as the named class representative to the class. Undersigned counsel is an active practitioner whose combined experience and current diligence and commitment to this litigation will more than adequately protect the interests of the class. (**Exhibit 1**). As demonstrated by **Exhibit 1**, it is clear that Plaintiff has chosen legal counsel who is "qualified, experienced and able to vigorously conduct the proposed litigation."

Because the named plaintiff's interests do not conflict with those of the class, and because the named plaintiff has chosen able and experienced class counsel, the adequacy of representation prerequisite of Fed. R. Civ. P. 23 has been satisfied.

## IV.   The Requirements of Rule 23(b)(2) Are Satisfied

In order to certify a class in this case, the Court must determine that all the requirements of Rule 23(a) are met and, in addition, that one of the requirements of Rule 23(b) is met. Rule 23(b)(2) provides the most appropriate vehicle for class certification in this case. Fed. R. Civ. P. 23(b)(2) provides:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

13

. . .
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Rule 23(b)(2) thus has two basic requirements for maintenance of class actions under this part. First, the party opposing the class must have acted or failed to act on grounds applicable to all class members. Second, final injunctive relief, here, enjoining the unlawful debt collection practices of RMA, must be appropriate. Rules Advisory Committtee Notes to 1966 Amendments to Rule 23, 39 F.R.D. 69, 102 (1966). *See generally* A. Conte, *Newberg on Class Actions*, § 4.11 (3d ed. 1992).

Rule 23(b)(2) class actions are generally limited to those cases which seek primarily injunctive or declaratory relief. *Id.* Section 4.11 at 4-39. Thus, for this class (for which certification is being sought only under Counts II and III of Plaintiff's Complaint) the Court is being asked to enjoin the unlawful debt collection practices of RMA. In such a case, Rule 23(b)(2) classes are appropriate, where the predominant relief or remedy sought is an injunction. *Id.* Section 4.12 at 4-43.

Both elements required under Rule 23(b)(2) are met in this case. The party opposing the class, RMA, has, by definition of the class, engaged in the same unlawful standard practices with respect to the Plaintiff and all of the class members. Complaint ¶ 29. The second element – that final injunctive relief be appropriate – is also satisfied. Final injunctive relief is appropriate in order to cause RMA to cease its unlawful debt collection conduct against class members.

V. **These Claims Are Properly Maintained as a No Notice, Non-Opt Out Class Action Because the Relief Sought Is Prospective Only**

Plaintiff seeks certification of a no notice, non-opt out class. An action is properly maintained as a no notice, non-opt out class action, pursuant to Rule 23(b)(2), where the party

14

opposing the class has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief. This is so especially where the relief sought, as here, is prospective injunctive relief only.

Here Plaintiff does not seek to represent the class for the purpose of making a claim for damages. Injunctive relief would provide an immediate benefit and is appropriate because RMA has acted and will continue to act in the same wrongful way toward the class unless enjoined from doing so. Plaintiff seeks to enjoin RMA's illegal conduct to prevent future injury to class members. Plaintiff's claims in Counts II and III are properly maintained as a non-opt out class action because the requirements of Rule 23(b)(2) are satisfied.

Cases certified under Rule 23(b)(2) are mandatory class actions since there is no right to notice or to opt out of the class. Rule 23(c)(3) provides:

> The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class.

The rationale for a 23 (b)(2) class being a non-opt out class is that the rationale for certification — that similarly situated individuals have their rights adjudicated by injunctive relief in a similar fashion — is furthered by applying the ruling to all persons who fall within the definition of the class. It is for this reason that 23 (b)(2) classes do not require individual notice

## CONCLUSION

Class certification for injunctive relief only on Counts II and III will provide an efficient and appropriate resolution of the controversy. The proposed class meets the requirements of Rules 23(a) and (b)(2). A class action for prospective injunctive relief is the best method to protect class members from RMA's illegal conduct which Plaintiff challenges.

For the reasons stated above, Plaintiff respectfully requests that the Court certify this action as a class action.

Respectfully submitted,

*[signature]*

Yvonne W. Rosmarin  BBO #566428
Law Office of Yvonne W. Rosmarin
58 Medford Street
Arlington, MA 02474
781-648-4040

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on __4/27/04__.

*[signature]*

Yvonne W. Rosmarin